# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **THOMAS E. PEREZ**, Secretary of Labor, United States Department of Labor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil action no.: 1:11-cv-07485 ) |
| **SUPER MAID, LLC**, an Illinois limited liability company, d/b/a **SUPERMAID**, and **PAUL KRAWCZYK**, an individual, | ) Hon. John J. Tharp, Jr. ) ) ) |
| Defendants. | ) |

## SECRETARY OF LABOR'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

On October 21, 2011, the Secretary of Labor filed a complaint, seeking injunctive relief, restraining minimum wage, overtime, and record keeping violations of the Fair Labor Standards Act, as Amended (29 U.S.C. § 201 *et seq*.) (hereinafter "the Act" or the "FLSA") and recovery of unpaid minimum wage and overtime compensation with an equal amount in liquidated damages under the Act. The Secretary's lawsuit specifically seeks $184,505.26 for 55 employees in unpaid compensation and liquidated damages, for workers misclassified by defendants as independent contractors. Employment status is a legal, not factual, issue. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1986). The pleadings, deposition, answers to interrogatories, admissions, declarations, and defendants' business records demonstrate that there is no genuine issue as to any material facts related to liability and damages and that the Secretary is entitled to a judgment as a matter of law under Fed.R.Civ.P. 56(a). In deciding summary judgment motion, a court must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those

Factss." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Bennington v. Caterpillar, Inc.*, 275 F.3d 654 (7th Cir. 2001). The movant may meet its initial burden by "showing –that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party then must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine" factual dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT[1]

### A. Defendant, Paul Krawczyk, Is an Individual Employer.

Paul Krawczyk, President and owner of Super Maid, is an individual employer within the meaning of section 3(d) of the Act. The FLSA defines "employer" to "include any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983); *see also Herman v. RSR Security Services, Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991). "Courts in this district have also held that corporate officers with significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees can be personally liable for the corporation's failure to pay owed wages." *Solis v. Int'l Detective & Prot. Serv. Ltd.*, 819 F.Supp.2d 740, 748 (N.D. Ill. 2011) (Kendall, J.)

---

[1] Defendant Super Maid, LLC admitted that it was an enterprise within the meaning of section 3(r) of the Act (Answer ¶ III) and that it was engaged in commerce within the meaning of section 3(s)(1)(A) of the Act (Answer ¶ IV). (PSJ Ex. B).

*citing Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 646 (N.D. Ill. 2007) (Nolan, M.J.); *Harper v. Wilson*, 302 F.Supp.2d 873, 883 (N.D. Ill. 2004) (Denlow, M.J.). As the president and sole owner of Super Maid, it is undisputed that Mr. Krawczyk directly controls the pay and employment practices, hiring workers, assigning work, setting wages, handling payroll and timesheets, among other things. (PSJ Facts[2] ¶ 4). Mr. Krawczyk admitted that he "actively supervised the day-to-day operations and management of **SUPER MAID, LLC** in relation to its employees," although denying the characterization of independent contractors as employees. (PSJ Facts ¶ 5). As an individual employer, defendant Krawczyk is jointly and severally liable for the violations and damages.

> **B.** **Defendants' Maids, "Employees" Within the Meaning of Section 3(e)(1) of the FLSA, are Entitled to the Protections of the FLSA.**

Defendants denied employees minimum wage and overtime compensation due under the FLSA by improperly treating them as "independent contractors." Defendants' Answer to the Secretary's Complaint denied that that they had employees, claiming that they had "independent contractors." (PSJ Ex. B, ¶¶ II(B), IV). Defendants require applicants for maid positions to complete "Employee Application," "Employee Non-Compete Agreement," and "Employee Responsibilities" forms, which are executed by individuals, not businesses. (PSJ Facts ¶¶ 13, 15). Maids do not own their own companies. (PSJ Facts ¶ 15). The "Employee Non-Compete Agreement" requires applicants to agree to the following non-compete clause:

> For good consideration and as an inducement for **Super Maid, LLC** the undersigned Employee hereby agrees not to directly or indirectly compete with the business of the Incorporation and its successors assigns during the period of employment and for a period of **3 years** following termination of employment and notwithstanding the cause or reason for termination.

---

[2] *Secretary of Labor's Statement of Material Facts in Support of His Motion for Summary Judgment* (PSJ Facts).

> The term "not compete" as used herein shall mean that the **Employee shall not accept employment or be employed (either legally or on a cash basis) by any current or former customers of the Incorporation.**

((PSJ Facts ¶ 14, emphasis in original). Defendant Krawczyk admitted that this clause means maids are not allowed to work for another maid service. (Defs.' Dep. 88:2-9). Krawczyk also admitted he told maids they were not allowed to work for another maid service. *Id.* In a very similar case, *Harris v. Skokie Maid & Cleaning Service*, 2013 WL 3506149 *6 (N.D. Ill. 2013) (Holderman, J.), house maids were found to be employees, not independent contractors, despite maids executing "Independent Contractor Applications," stating that they understood that they were not employees of the company. *See also Hargis v. Wabash Railroad Co.*, 163 F.2d 609, 612 (7th Cir. 1947) (reversing lower court's finding for employer and its written agreement's use of independent contractor for janitor erroneous, in part, because the contract did not state a definite period, but rather could be terminated by either party upon notice.). Under the FLSA, courts examine the working relationship between the putative employer and its workers rather than a contractual arrangement between the parties to determine an employment relationship. "The FLSA is designed to defeat rather than implement contractual arrangements." *Lauritzen*, 835 F.2d at 1545 (Easterbrook concurring). It is well-established that employees cannot waive their rights to minimum wage and overtime pay under the FLSA. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

The FLSA broadly defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" to include "to suffer or permit to work," 29 U.S.C. § 203(g). Courts have expansively interpreted the definition of employment status

under the FLSA. *See e.g., Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). The Supreme Court has consistently recognized Congress' intent to expansively define employment to ensure that the purpose of the FLSA is not defeated. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985), *quoting Mitchell v. Lubin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959); *see also Darden*, 503 U.S. at 326; *United States v. Rosenwasser*, 323 U.S. 360, 362-63 (1945) ("A broader or more comprehensive coverage of employees…. would be difficult to frame.") The "suffer or permit" standard under the FLSA is broader than the common law control test in determining the employment status of a worker. *Rosenwasser*, 323 U.S. at 363, n. 3.

The "economic reality" test guides the inquiry of employment status. It examines, as a matter of economic reality, if the worker is in business for himself or dependent upon the employer. *See Tony & Susan Alamo*, 471 U.S. at 301; *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961). In determining whether an employment relationship exists, courts examine the circumstances of the whole activity to determine the "economic reality" of the relationship. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947); *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987), *reh'g en banc denied*, (7th Cir. 1988). The "economic reality" test consists of six factors: 1) the degree of the alleged employer's right to control the manner in which the work is performed; (2) the worker's investment in equipment or materials for the task; (3) the worker's opportunity for profit or loss, depending upon his skill; (4) the permanency of the relationship between the parties; (5) the degree of skill required for the rendering of the services; and (6) whether the service rendered is an integral part of the alleged employer's business. *U.S. v. Silk*, 331

U.S. 704 (1947); *Lauritzen*, 835 F.2d at 1534; *Int'l Detective*, 819 F.Supp.2d at 749. As a matter of economic reality, defendants' house maids are employees.

*1. Control.* The control factor weighs heavily in favor of a conclusion that defendants' maids are employees. Defendants requires newly hired maids to undergo training to review Super Maid's rules and regulations (PSJ Facts) and for on-the-job training of no more than three days. (PSJ Facts ¶¶ 30, 31, 33). The training consists of cleaning houses with another maid team, who inspects the work. (PSJ Facts ¶ 32). Defendants requires maids to clean floors on their hands and knees, despite their preference to clean floors with mops. (PSJ Facts ¶ 26). If the putative employer controls the "manner and method" of work, then the workers are likely employees. *Int'l Detectives,* 819 F.Supp.2d at 750; *see also Skokie Maid & Cleaning Service*, 2013 WL 3506149 *7. Maids are required to wear a uniform consisting of a company polo shirt and specific type of pant. Defendants monitor the quality of the maids' performance by randomly calling customers for feedback. (PSJ Facts ¶ 59, 60).

Maids receive a schedule of the jobsites each night for the following day. They are required to complete the jobs at the assigned times; they cannot start work early if they arrive early. (PSJ Facts ¶ 34, 25, 37). Defendants assign two maids to work together as a team and are required to drive themselves to jobsites in company-owned vehicles, which display "Supermaid" on the sides. (PSJ Facts ¶¶ 27, 29). The vehicles have a GPS tracking system, which the company uses to monitor maids whereabouts to ensure compliance with the schedule. Super Maid uses the system to instruct the maids to hurry if they are running behind and to ensure that they do not go out of their way to stop for lunch. (PSJ Facts ¶¶ 55,

6

56). Maids are not permitted to take a meal break, so they are forced to eat in the vehicle between jobs or after work. (PSJ Facts ¶ 54).

Pay rates, pay raises, and deductions are unilaterally set by Mr. Krawczyk. Driver maids are paid approximately $20 per house and passenger maids were paid around $15 per house. Maids are paid by the job, regardless of the amount of time they actually work; bonuses and raises are at the discretion of the defendants. (PSJ Facts ¶¶ 43 – 47). In *Skokie Maid*, the employer set the schedule, provided transportation, required training, unilaterally set pay and made pay deductions, and gave specific cleaning instructions. *Skokie Maids*, 2013 WL 3506149 at *7, *see also Quinteros v. Sparkle Cleaning, Inc*., 532 F.Supp.2d 762, 769 (D. Md. 2008) (holding janitors were misclassified as independent contractors, despite the defendant's assertion that the workers would perform the work contracted with little control by the company, finding that it instructed worker how to work, set their work schedule, required janitors to fill out time sheets, and could fire workers at-will.) In the instant matter, defendants train maids, set pay rates, assign clients, schedule work, transport maids, and can fire workers at-will. *See also Bulaj v. Wilmette Real Estate and Management Co.*, 2010 WL 4237851 (N.D. Ill. 2010) (Denlow, J.) (finding janitorial and building maintenance worker an employee, not independent contractor, where company set work schedule, monitored work, and disciplined worker);

As a form of controlling maids, defendants took pay deductions for numerous, perceived infractions. Pay deductions are taken for the following: customer complaints, parking and traffic tickets, damage to the company-owned vehicle, failing to wear the uniform, damage to client property, and missing cleaning products (PSJ Facts ¶ 59 – 64). Maids cannot dispute the pay deductions. Defendant Krawczyk admitted that he deducts for

7

tickets even when workers tell him that they were not at fault. (PSJ Facts ¶ 65). If a maid takes a day off, Super Maid sometimes assigns more jobs, fewer jobs, dirtier jobs, or jobs that are farther away. (PSJ Facts ¶¶ 38, 39, 51).

The "economic realities" test examines whether the worker is in business for herself or dependent upon the company for which she performs services. The maids think of themselves as employees of Super Maid; do not operate their own company; cannot hire other maids to assist or perform their work; and do not submit invoices or similar documents to charge for their work. (PSJ Facts ¶¶ 12, 15, 49, 66). Maids submit Super Maid timesheets reflecting the jobs performed on a daily and weekly basis.[3] (PSJ Facts ¶ 66). Defendants attempted to make the maids independent contractors through their "Employee Applications for Supermaid LLC" and "Employee Non-Compete Agreement for Super Maid, LLC," all the while maintaining strict control of the maids and treating them as employees. The Non-Compete Agreement states, in pertinent part: "[e]mployees hereby agree not to directly or indirectly compete with the business of the Incorporation and its successors assigns [sic] during the period of employment and for a period of **3 years** following termination employment and notwithstanding the cause or reason for termination," (emphasis in original) (PSJ Facts ¶ 14). Clearly, the overly broad non-compete clause prohibiting maids from working for any competing service, *inter alia*, evidences the maids' economic dependence on Super Maid and defendants' control. Krawczyk will not pay maids their last paycheck or sue them if the violate the non-compete clause. (PSJ Facts ¶ 17). Defendants controlled the terms and provisions of the relationship, work performed, pay and pay deductions; and work assignments and

---

[3] Many maids either did not submit the timesheets or did not bother keeping track of all their times or jobs because they were paid established rates.

schedules; and even monitoring driving routes of the maids. The degree of control exercised by defendants fully demonstrates an employment relationship.

    *2. Opportunity for profit or loss.* Defendants' maids have no opportunity for profit or loss, as they are paid a flat rate based on the number of homes cleaned. The flat rate is unaffected by the actual time it took to clean. "An independent contractor risks loss of an investment and has the opportunity to increase profits through managerial discretion." *Skokie Maids*, 2013 WL 3506149 at *7 *citing E.E.O.C. v. Cent. Broad. Corp.*, 1990 WL 43286 at *4 (N.D. Ill. 1990) (Conlon, J.). Maids have no opportunity to earn more through business skills or efficiency or, conversely, suffer losses through inefficiency or lack of skills. (PSJ Facts ¶ 48). This factor is further indicia that the maids are defendants' employees.

    *3. Investment*. The maids do not have their own business, liability insurance, bonds, vehicles, workers, or cleaning supplies or equipment. Applicants are neither required nor have their own bonds or liability insurance; Supermaid provides cleaning supplies, tools, and equipment, and transportation to jobsites. (PSJ Facts ¶¶ 22, 24, 25, 27). "In this case, there is no evidence that the maids were required to bring anything to the worksites except themselves." *Skokie Maids*, 2013 WL 3506149 at *8. Defendants' maids do not have any investment to establish an independent contractor status.

    *4. Degree of skill*. Defendants admitted that maid work requires little skill and is an "easy job." (PSJ Facts ¶ 23). Maid work includes cleaning of kitchens, bathrooms, vacuuming, dusting, making beds, taking out trash, among other things. *Id*. These tasks require lots of sweat but little skill. *See e.g*, *Hargis*, 163 F.2d at 612.

*5. Permanency of working relationship.* Defendants' maids are contractually prohibited from working for another cleaning agency. There is no time period set forth in any of the employment documents, which is consistent with at-will employment. (PSJ Ex. N – P). Defendants and maids contemplated a long-term working relationship, which was preferred by clients. (PSJ Facts ¶¶ 19 – 21). "The more permanent the relationship, the more likely the worker is to be an employee." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 309 (4th Cir. 2006). The parties intend an indefinite lasting-working relationship.

*6. Integral part of the business.* Super Maid admitted that it is engaged in the business of house cleaning services. (PSJ Ex. B II(A)). "'[W]orkers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer.'" *Harper*, 302 F.Supp.2d at 879, *quoting Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1386 (3rd Cir. 1985). The work of maids is essential to the cleaning business of Super Maid. Similar to *Skokie Maid*, all of the factors of the economic realities test weigh heavily in favor of a finding of an employment relationship.

**C.    Defendants Fail to Pay at Least $7.25/Hour For Certain Hours Worked.**

Eight employees were not paid, at least, the minimum wage.[4] Defendants failed to pay for travel time from jobsite to jobsite. In determining the "workday" for purposes of compensation, an employer must follow the principles of the continuous "workday" rule that is "the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period." 29 C.F.R. §

---

[4]    Due to incomplete of lack of time and pay records, plaintiff was only able to calculate the unpaid minimum wage for a few employees due to the lack of business records submitted by defendants. (PSJ Facts ¶ 76, 77).

790.6(b). *See also*, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). It is well-established that time spent traveling from job site to job site during the workday is counted as hours worked. 29 C.F.R. § 785.38. It is undisputed that defendants only paid maids a flat rate for each house cleaned and did not pay for any travel time (PSJ Facts ¶ 52). Maids were assigned job sites that covered a wide geographic area that included Chicago, outlying suburbs and northwest Indiana (PSJ Facts ¶ 6). Maids were prohibited from driving company-owned vehicles to places other than their own homes and job sites and were monitored by defendants and their vehicles' GPS. They drove directly from job site to job site.

The employees' timesheets reflect the times that they started and ended at each house; thus, the travel time between job sites is reflected by the gap between the first job sites' ending time and the next job site's start time. Plaintiff used the start time at the first job site and the ending time at the second job site reflected on the timesheets to determine the hours worked each day. The total hours worked each workweek was then divided by the pay reflected on defendants' pay records to determine if each hour was paid at a rate not less than $7.25.[5] (*See* PSJ Ex. T for details regarding the back wage calculations.) Plaintiff has calculated $1,187.60 for eight employees in unpaid minimum wage.

### D. **Defendants Do Not Pay The Overtime Premium for Hours in Excess of 40 in a Workweek.**

It is uncontroverted that defendants do not pay overtime when maids work more than 40 hours a week. Employers are prohibited from employing non-exempt employees

---

[5] The total amount paid by defendants was reflected on payroll records, which was used to calculate a regular rate by dividing the number of hours worked. Plaintiff reconstructed an average hourly rate where there were gaps in records. This method also captured the minimum wage due where the hours worked at the jobsite exceeded the flat pay rate.

for more than 40 hours in a workweek, unless such employees are compensated for their employment in excess of 40 "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Defendants misclassify employees as independent contractors and pay them their regular rate for all hours worked. Although many workweeks were under 40 hours, defendants do not count travel time which could take them over 40 hours a week. The employers admitted paying employees their regular rate for all hours worked. (*See* section D above and PSJ Ex. T for details of back pay calculations.) Defendants' failure to pay employees overtime violated section 7 of the Act and a total of $91,065.02 in unpaid overtime compensation is due 55 employees for the time periods reflected on the "Summary of Employee Backpay" (PSJ Ex. U, Att. 5).

### E. Defendants Fail to Maintain Required Records.

Defendants do not maintain accurate records of employees and hours worked, in accordance with section 11(c) of the FLSA and 29 C.F.R. Part 516. Section 11(c) of the FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions of employment maintained by him," as prescribed by regulation of the Secretary. During the discovery phase, plaintiff requested defendants to produce all time and pay records, among other things (PSJ Ex. U). After repeatedly seeking the court to compel defendants to produce the requested records (Docket Nos. 30, 33, 34, 37, 43, 46, 47), defendants produced partial time and pay records (PSJ Ex. S) (PSJ ¶¶ 76, 77), stating that they were all the records maintained. Many of the employees had timesheets but no pay records and many timesheets were missing or had incomplete information.[6] *Id*.

---

[6] For example, dates were missing and/or employees only wrote in their first name and some workers had the same names.

The U.S. Supreme Court recognized the importance of accurate record keeping in the FLSA enforcement scheme and held that an employer's failure to maintain accurate records of hours actually worked or kept records that are inaccurate or inadequate shifts the burden of proof concerning back wage liability to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1945); *see also Wirtz v. Turner*, 330 F.2d 11 (7th Cir. 1964). Thus, for any period in which the employer has failed to maintain accurate records as required by the Act, the Secretary's burden of proof, as to the extent of any back wage liability, is met by showing that work was performed which was not properly compensated and producing sufficient evidence to show the nature and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer either to come forward with precise evidence of the work performed or to rebut the reasonableness of the inference to be drawn from the Secretary's evidence. *Mt. Clemens*, 328 U.S. at 687-88; *see also Herman v. Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999). Evidence which provides a reasonable basis for inference of a "pattern or practice" concerning the actual hours worked is sufficient for approximation of a remedy which includes non-testifying employees. *Martin v. Tony and Susan Alamo Foundation*, 952 F.2d 1050 (8th Cir. 1992). The declaration of Deloitte Financial Advisory sets forth a detailed explanation of the back wage computations (PSJ Ex. U). The timesheets and payroll records provided by the defendants were transcribed by weeks, pay, and hours; and Excel used to calculate pay and hours and to reconstruct individual averages where there were gaps in records; to calculate the unpaid compensation. Thus, plaintiff has proven the nature and extent of the unpaid work.

### F. Plaintiff Is Entitled to Recover an Additional Amount Equal to the Amount of Unpaid Compensation, as Liquidated Damages.

Liquidated damages in an equal to the amount of back wages due employees is an appropriate remedy, under section 16(c) of the Act. 29 U.S.C. § 216(c). Under the FLSA, "[d]ouble damages are the norm, single damages the exception." *United Consumers Club, Inc.*, 786 F.2d at 310. The FLSA make liquidated damages mandatory, unless an employer proves it acted in good faith and reasonable belief. *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998); *see also Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995). Section 11 of the Portal-to-Portal Act provides the affirmative defense of a good faith and reasonable belief to liquidated damages, 29 U.S.C. § 260. Defendants did not plead a good faith defense in their Answer to the Complaint. (PSJ Ex. B). Furthermore, they did not assert any facts in their discovery responses to establish the affirmative defense. (PSJ Ex. F).

### G. Defendants Should Be Enjoined From Prospectively Violating the FLSA.

District courts may enjoin violations of the pay provisions of the Act, pursuant to section 17 of the FLSA, 29 U.S.C. § 217. The Seventh Circuit has long held that an injunction should issue upon proof of FLSA violations, where no recognized mitigating factors appear or are represented. *Walling v. National Ice and Fuel Corp.*, 158 F.2d 28 (7th Cir. 1946). Defendants have continued to treat and compensate maids as independent contractors (PSJ Facts ¶ 72). When the court has no confidence that a defendant will comply with the FLSA in the future, an injunction is appropriate. *See, e.g., Int'l Detectives*, 819 F.Supp.2d at 755. Mitigating factors neither exist nor have been asserted by defendant; therefore, an injunction is an appropriate remedy to ensure future compliance with the FLSA.

## CONCLUSION

The Secretary seeks entry of a judgment against defendants for violating the minimum wage, overtime, and recordkeeping requirements of the FLSA; finding defendants liable for the uncompensated minimum wage and overtime, as well as liquidated damages, totaling $184,505.26; and enjoining and restraining defendants from violating the FLSA. The Secretary respectfully requests that his motion for summary judgment be granted.

Respectfully submitted,

**M. PATRICIA SMITH**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

/s/ Linda J. Ringstad
**LINDA J. RINGSTAD**

/s/ Stacey L. Scanlon
**STACEY L. SCANLON**

Attorneys for **THOMAS E. PEREZ**,
Secretary of Labor,
U.S. Department of Labor, Plaintiff

U.S. Department of Labor
Office of the Solicitor
230 South Dearborn Street, Rm. 844
Chicago, Illinois 60604
Telephone No.:  (312) 353-3668
ringstad.linda@dol.gov