UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **THOMAS E. PEREZ**, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> **SUPER MAID, LLC**, and Illinois limited liability company, d/b/a **SUPERMAID**, and **PAUL KRAWCZYK**, an individual, <br><br> Defendants. | Civil action no.: 1:11-cv-07485 <br><br> Hon. John J. Tharp, Jr. |

## SECRETARY OF LABOR'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(a), plaintiff, **THOMAS E. PEREZ**, Secretary of Labor, United States Department of Labor, by his undersigned attorney, submits the following statement of material facts in which there is no genuine issue and that plaintiff is entitled to judgment as a matter of law under the Fair Labor Standards Act of 1938, as Amended, 29 U.S.C. § 201 *et seq.* (hereinafter the "Act" or "FLSA").

1. The plaintiff, Thomas E. Perez, Secretary of Labor, United States Department of Labor, is authorized to bring an action in Federal court to recover unpaid minimum wage and overtime compensation and an equal amount of liquidated damages, as well as an injunction, under sections 16(c) and (17) of the Act, respectively. (Compl.)[1]

2. Jurisdiction of this action is conferred upon the Court by sections 16(c) and 17 of the Act (29 U.S.C. §§ 216(c) and 217) and 28 U.S.C. § 1345. (Compl. ¶ I; Answer ¶ I[2]).

---

[1] Secretary of Labor's *Complaint* filed herewith as PSJ Ex. A.
[2] Defendants' *Answer* to Complaint filed herewith as PSJ Ex. B.

3. Super Maid, LLC d/b/a Supermaid ("Supermaid") is and, at all times pertinent hereto, has been an Illinois limited liability company. (Answer ¶ II(A)). Supermaid, at all times between 2009 and 2012, had an office at 451 N. Kelly Court, Romeoville, Illinois 60446. (Answer ¶ II(A); Defs.' Dep. 8:22-9:11, Aug. 29, 2013[3]). Since 2012, Supermaid has had an office at 584 W. Taylor Road, Romeoville, Illinois. (Defs.' Dep. 8:22-9:11).

4. Paul Krawczyk ("Krawczyk") is and, at all times relevant, was sole owner and president of Supermaid and managed the day-to-day operations of the company. (Answer ¶ II(B); Defs.' Admis. 5-6[4]; Defs.' Dep. 7:15-19). It is undisputed that Krawczyk directly controlled the pay and employment practices, hiring workers, assigning work, setting wages, handling payroll and timesheets, among other things. (Defs.' Interrog. Ans. 4[5]; Office Manager Decl. ¶¶ 19-20, 44[6]; Defs.' Dep. 12:20-14:6, 14:15-17, 30:24-33:18, 78:20-79:14, 111:4-25, 119:22-120:7, 127:21-128:20).

5. Krawczyk admits he is acting and has acted directly or indirectly in the interest of Supermaid in relation to its workers, actively supervising the day-to-day operations and management of the company. (Answer ¶ II(B)).

6. At all relevant times, Supermaid provided cleaning services to households and businesses in Chicago, the Chicago suburbs, and northwest Indiana. (Defs.' Dep. 10:5-18, 48:18-49:13; Defs.' Admis. 1).

7. Defendant is and, at all times pertinent hereto, has been engaged in business in Will County. (Answer ¶ II(A)). The United States District Court for the Northern District of

---

[3] 30(b)(6) Deposition transcript of Krawczyk and Supermaid filed herewith as PSJ Ex. C.
[4] *Secretary of Labor's Requests for Admissions to Defendant (First Set)* filed herewith as PSJ Ex. D, deemed admitted by this Court's order on April 30, 2013 (Dkt. # 43), filed herewith as PSJ Ex. E.
[5] *Secretary of Labor's Interrogatories to Defendants (First Set)* filed herewith as Ex. F., and *Defendants' First Answers to Secretary of Labor's Interrogatories to Defendants (First Set)* filed herewith as Ex. G.
[6] *Declaration of Office Manager Andrea Munoz* filed herewith as PSJ Ex. Q.

Illinois is the proper venue for this action, where the defendant operates Supermaid and the alleged violations have occurred.

8. Supermaid admits that it is and was engaged in related activities performed through unified operations or common control for a common business purpose and is an enterprise within the meaning of section 3(r) of the Act. (Answer ¶ III).

9. Supermaid admits it is an enterprise engaged in commerce within the meaning of section 3(s)(1)(a) of the Act. (Answer ¶ IV). Supermaid's annual dollar volume of sales exceeded $500,000 in 2009, 2010, 2011, and 2012. (Defs.' Admis. 7-10; Defs.' Dep. 70:20-72:1).

10. The individuals listed on Exhibit A of Plaintiff's complaint (hereinafter the "maids") were engaged by defendants to perform cleaning services for defendants. (Defs.' Admis. 3; Defs.' Interrog. Ans. 1(a)).

11. Supermaid has a website at www.Supermaid.com. (Defs.' Admis. 2; Defs.' Admis. Ex. A, Website PL-00001-PL-00010[7]). On its website, Supermaid characterizes its maids as employees to its clients and potential clients. (Defs.' Admis. Ex. A, Website PL-00003, PL-00006).

12. Supermaid's maids thought of themselves as employees, not independent contractors. (Arand Decl. ¶ 6[8], Bahena Decl. ¶ 6[9], Cruz Decl. ¶ 6[10], De la Cruz Decl. ¶ 6[11], Garcia Decl. ¶ 6[12], Villasenor Decl. ¶ 6[13]).

---

[7] Because of an inconsistency in Bates numbering, two sets of documents were labeled as PL-00001-PL-00010. When referring to the Supermaid website pages herein, Plaintiff will precede the Bates numbers with the word "Website." The second set of documents labeled PL-00001-PL-00010 are timesheets.
[8] *Declaration of Maria Arand* filed herewith as PSJ Ex. H.
[9] *Declaration of Mariana Bahena* filed herewith as PSJ Ex. I.
[10] *Declaration of Iris Cruz* filed herewith as PSJ Ex. J.
[11] *Declaration of Denisse de la Cruz* filed herewith as PSJ Ex. K.
[12] *Declaration of Angelica Garcia* filed herewith as PSJ Ex. L.

3

13. Individuals applying for maid positions are required to fill out and sign Supermaid's "Employee Application for Supermaid LLC" ("Employee Application"), "Employee Non-Compete Agreement for Super Maid, LLC" ("Employee Non-Compete Agreement") and "Employee Responsibilities & Agreements" ("Employee Responsibilities & Agreements") forms. (Employee App.[14]; Employee Non-Compete[15]; Employee Responsibilities form[16]; Office Manager Decl. ¶¶ 10, 16; Defs.' Dep. 77:4-18, 82:3-24, 89:7-90:8).

14. The Employee Non-Compete requires applicants to agree to a non-compete clause.

> For good consideration and as an inducement for **Super Maid, LLC** the undersigned Employee hereby agrees not to directly or indirectly compete with the business of the Incorporation and its successors assigns during the period of employment and for a period of **3 years** following termination of employment and notwithstanding the cause or reason for termination.
>
> The term "not compete" as used herein shall mean that the **Employee shall not accept employment or be employed (either legally or on a cash basis) by any current or former customers of the Incorporation.**

(Employee Non-Compete, emphasis in original).

15. Defendants' Employee Application, Employee Non-Compete Agreement, and Employee Responsibilities forms are executed by individuals, not businesses. (Employee App., Employee Non-Compete, Employee Responsibilities form). Maids do not own their own companies. (Arand Decl. ¶ 7, Bahena Decl. ¶ 7, Cruz Decl. ¶ 8, De la Cruz Decl. ¶ 8, Garcia Decl. ¶ 7, Villasenor Decl. ¶ 7).

---

[13] *Declaration of Maria Villasenor* filed herewith as PSJ Ex. M.
[14] Employee Application for Supermaid LLC form is filed herewith as PSJ Ex. N.
[15] Employee Non-Compete Agreement for Super Maid, LLC form is filed herewith as PSJ Ex. O.
[16] Employee Responsibilities & Agreements form is filed herewith as PSJ Ex. P.

16. Krawczyk admits the Employee Non-Compete Agreement means maids are not allowed to work for another maid service. (Defs.' Dep. 88:2-9). Krawczyk also admits he told maids they were not allowed to work for another maid service. (*Id.*)

17. In training, maids have been told that if they are caught with their own clients, Krawczyk will keep their last check or sue them. (Office Manager Decl. ¶ 11, Bahena Decl. ¶ 10). Krawczyk has threatened to sue maids for violating the Employee Non-Compete Agreement. (Office Manager Decl. ¶¶ 11-12).

18. Maids believe they were not allowed to clean houses other than those assigned by Supermaid. (Arand Decl. ¶ 10, Bahena Decl. ¶ 10, De la Cruz Decl. ¶ 11, Garcia Decl. ¶ 10).

19. Supermaid did not engage the services of maids on a temporary or short-term basis. (Defs.' Admis. 23; Arand Decl. ¶ 4, Bahena Decl. ¶ 4, De la Cruz Decl. ¶ 4, Garcia Decl. ¶ 4, Villasenor Decl. ¶ 4). Krawczyk admits most maids stay with Supermaid for a long time. (Defs.' Dep. 170:7-13). Maids are often looking for permanent, long-term jobs when they apply to Supermaid. (Cruz Decl. ¶ 7, De la Cruz Decl. ¶ 7).

20. Likewise, when Supermaid first hires maids, it is looking for workers who are planning to work for the company for a long time because Defendants' clients prefer to have the same maids regularly clean their premises. (Defs.' Dep. 47:11-48:17, 78:7-79:14, 169:5-9).

21. Supermaid frequently assigns the same maids to the same customers. (Defs.' Admis. 22; Defs. Dep. 110:19-25). In fact, on its website, Supermaid answers the frequently asked question, "I am very happy with the people who are doing my home. Will they always be the same?" with the response, "We understand the importance of being comfortable with

who you have in your home.  Because of this we will make every effort to provide consistency in your staff…" (Defs.' Admis. Ex. A, Website PL-00004).

22. Supermaid has, and holds out to its clients that it has, a bond and liability insurance for work performed by maids at various worksites. (Defs.' Admis. 48-49; Defs.' Admis. Ex. A, Website PL-00003, PL-00005).  Applicants for work at Supermaid are not required to have a bond or liability insurance. (Def's Adm. Resp. 47, Defs.' Dep. 165:5-7). Maids did not carry their own liability insurance. (Arand Decl. ¶ 8, Bahena Decl. ¶ 8, Cruz Decl. ¶ 9, De la Cruz Decl. ¶ 9, Garcia Decl. ¶ 8, Villasenor Decl. ¶ 8).

23. Maid work consists of cleaning homes and offices, including vacuuming, dusting, cleaning kitchens and bathrooms, taking out the trash, washing floors, making beds, among other things. (Defs.' Interrog. Ans. 1(a); Defs.' Dep. 166:6-167:8).  Maid work does not require any special skills and Krawczyk believes it is an "easy job."  (Defs.' Dep. 169:19-170:6).

24. Supermaid provides cleaning supplies, tools, materials, and equipment to maids. (Defs.' Admis. 34-35; Office Manager Decl. ¶ 13, Arand Decl ¶ 11, Bahena Decl. ¶ 11, Cruz Decl. ¶ 12, De la Cruz Decl. ¶ 12, Garcia Decl. ¶ 11, Villasenor Decl. ¶ 11).  Maids do not provide their own cleaning supplies, materials, or equipment. (Defs.' Admis. 36; Office Manager Decl. ¶ 13, Arand Decl ¶ 11, Bahena Decl. ¶ 11, Cruz Decl. ¶ 12, De la Cruz Decl. ¶ 12, Garcia Decl. ¶ 11, Villasenor Decl. ¶ 11).

25. Supermaid assures its customers on its website that it uses "National Brand Cleaning Products." (Defs.' Admis. Ex. A, Website PL-00005).  To prevent damage to customer homes, Supermaid requires maids to use the cleaning products it provides to them

unless Supermaid first approves an alternative product after testing it. (Defs.' Dep. 147:11-25).

26. Supermaid does not allow maids to use mops to clean floors. (Defs. Dep. 164:16-165:4; Office Manager Decl. ¶ 15; Arand Decl. ¶ 12, Bahena Decl. ¶ 12, Cruz Decl. ¶ 13, De la Cruz Decl. ¶ 13, Garcia Decl. ¶ 12, Villasenor Decl. ¶ 12). Supermaid requires maids to clean floors on their hands and knees with cleaning rags (*Id.*), despite their preference to clean floors with mops. (Cruz Decl. ¶ 13, De la Cruz Decl. ¶ 13).

27. Supermaid requires maids to use company-owned Honda Element vehicles to drive themselves to jobsites. (Defs.' Dep. 98:12-17; Defs.' Admis. 25; Defs.' Interrog. Ans. 1(c), 7). The Honda Element vehicles have "Supermaid" displayed on the side panels, and the company uses them as a "means of cheap advertisement" for Supermaid. (Defs.' Interrog. Ans. 7; Defs.' Admis. 26; Defs.' Dep. 98:18-99:3).

28. Supermaid pays for gasoline, maintenance, and insurance for the vehicles driven by maids. (Defs.' Admis. 32).

29. Supermaid assigns two maids to each vehicle – one driver and one passenger. (Office Manager Decl. ¶ 17, Arand Decl. ¶ 16, Bahena Decl. ¶ 15, Cruz Decl. ¶ 14, De la Cruz Decl. ¶ 14, Garcia Decl. ¶ 15, Villasenor Decl. ¶ 13). The two maids clean houses together as a team. (Defs.' Admis. 24; Defs.' Dep. 28:2-29:2; Office Manager Decl. ¶ 17, Arand Decl. ¶ 16, Bahena Decl. ¶ 15, Cruz Decl. ¶ 14, De la Cruz Decl. ¶ 14, Garcia Decl. ¶ 15, Villasenor Decl. ¶ 13).

30. Office manager Andrea Munoz was usually in charge of scheduling new maids for training and covering Supermaid's rules and regulations with the maids, starting in 2005 through July 2013. (Office Manager Decl. ¶¶ 4, 9-10).

31. Upon commencing work with Supermaid, the company requires maids to complete "no more than three days" of on-the-job training. (Defs.' Admis. 33; Defs.' Interrog. Ans. 8; Dep. 167:23-168:3; Office Manager Decl. ¶ 9, Arand Decl. ¶ 15, Bahena Decl. ¶ 14, Cruz Decl. ¶ 32, De la Cruz Decl. ¶ 16, Garcia Decl. ¶ 14, Villasenor Decl. ¶ 32).

32. During training, Supermaid sends the new maid with another maid team to learn how Supermaid performs the work, and the team also checks the quality of the new maid's performance. (Defs.' Interrog. Ans. 8; Defs.' Dep. 168:4-22, 169:10-170:2). Supermaid begins assigning jobs to new maids only after the new maid "qualifies her standards to ours." (Defs.' Interrog. Ans. 8).

33. Supermaid also requires maids to complete 1 ½ to three hours of training in the office. (Defs.' Dep. 86:16-87:15; Office Manager Decl. ¶ 10). During the in-office training, Supermaid explains the terms of the Employee Non-Compete Agreement and other company rules and regulations. (Defs.' Dep. 86:11-2, 109:16-110:5; Office Manager Decl. ¶ 10).

34. Supermaid assigns work schedules to maids each night for the following day. (Defs.' Admis. 19; Office Manager Decl. ¶ 22, Arand Decl. ¶21, Bahena Decl. ¶ 21, Cruz Decl. ¶ 17, De la Cruz Decl. ¶ 20, Garcia Decl. ¶ 21, Villasenor Decl. ¶ 18).

35. Supermaid requires maids to complete jobs at the times assigned and in the order assigned by Supermaid. (Defs.' Admis. 20; Office Manager Decl. ¶¶ 22, 29, Cruz Decl. ¶19, De la Cruz Decl. ¶23, Garcia Decl. ¶24, Villasenor Decl. ¶20). Krawczyk admits maids cannot change the order of their jobs unless Supermaid approves it first and sometimes Supermaid refuses. (Defs.' Dep. 114:12-116:6).

36. On average, the maids' first jobs of the day start at 8:00 a.m., but some start as early as 6:00 a.m. (Defs.' Dep. 46:6-12; Arand Decl. ¶ 28, Bahena Decl. ¶ 31, Cruz Decl. ¶ 22, De la Cruz Decl. ¶ 28, Garcia Decl. ¶ 29, Villasenor Decl. ¶ 24). On average, maids clean three to five houses per day, but sometimes up to seven houses in one day. (Arand Decl. ¶ 26, Bahena Decl. ¶ 29, Cruz Decl. ¶ 27, Garcia Decl. ¶ 31, Villasenor Decl. ¶ 26). On average, houses take two to three hours to clean, but can take up to 4 hours. (Arand Decl. ¶ 29, Bahena Decl. ¶ 32, Cruz Decl. ¶ 24, Garcia Decl. ¶ 30, Villasenor Decl. ¶ 25). On average, maids finish their last jobs between 5:00 p.m. and 7:00 p.m., but sometimes earlier or later. (Arand Decl. ¶ 30, Bahena Decl. ¶ 33, Cruz Decl. ¶ 31, Garcia Decl. ¶ 31, Villasenor Decl. ¶ 26).

37. If a maid arrives to a house early, she is not allowed to start cleaning early. (Office Manager Decl. ¶ 29, Bahena Decl. ¶ 24, De la Cruz Decl. ¶ 24, Garcia Decl. ¶ 24, Villasenor Decl. ¶ 21). If a maid finishes cleaning a house early, she is not allowed to leave the house early. (Defs.' Admis. 21; Office Manager Decl. ¶ 29, Bahena Decl. ¶ 25, Garcia Decl. ¶ 24). Krawczyk admits that a maid cannot start a job earlier than her assigned time unless she calls him and he approves it first. (Defs.' Dep. 116:7-15).

38. Maids cannot ask for more or fewer jobs, they must clean the houses Supermaid assigns. (Cruz Decl. ¶ 18, De la Cruz Decl. ¶ 21). Supermaid sometimes refuses to increase (or reduce) a maid's schedule even when she asks for more (or fewer) jobs. (Garcia Decl. ¶ 36, Villasenor Decl. ¶ 19).

39. At the end of the day, Supermaid requires maids to call the office to find out if Supermaid assigned them additional jobs for the day. (Office Manager Decl. ¶ 25, Bahena Decl. ¶ 34, De la Cruz Decl. ¶ 31, Garcia Decl. ¶ 32, Villasenor Decl. ¶ 27). Defendants state

that maids may refuse certain jobs (Defs.' Interrog. Ans. 6), but if maids refuse these additional jobs, Krawczyk becomes very angry or threatens to take pay out of maids' checks. (Office Manager Decl. ¶¶ 23, 25).

40. Supermaid also disciplines maids by taking them off the schedule or giving them fewer jobs the next day. (Office Manager Decl. ¶ 36, Bahena Decl. ¶ 34, Villasenor Decl. ¶ 27). Supermaid admits it "simply stop[s] assigning jobs to individuals who perform poorly and we know this when customer calls us and inform us about their poor performance and complain." (Defs.' Interrog. Ans. 8).

41. Supermaid pays maids on a weekly basis. (Defs.' Payroll[17]; Defs.' Admis. 11; Office Manager Decl. ¶ 21, Arand Decl. ¶ 20, Bahena Decl. ¶ 20, Cruz Decl. ¶ 16, De la Cruz Decl. ¶ 19, Garcia Decl. ¶ 20, Villasenor Decl. ¶ 17). Maids usually go to Supermaid office once per week to pick up their paychecks and cleaning supplies. (Defs.' Dep. 35:9-19; Defs.' Interrog. Ans. 3; Office Manager Decl. ¶ 23, Arand Decl. ¶ 33, Bahena Decl. ¶ 36, Cruz Decl. ¶ 30, De la Cruz Decl. ¶ 33, Garcia Decl. ¶ 34, Villasenor Decl. ¶ 30).

42. Supermaid charges its customers, on average, $80.00 per house, but the fee can range from $60.00 to $150.00 per house. (Office Manager Decl. ¶ 18). Supermaid charges up to $400 or $500 per house after a remodeling project. (*Id.*)

43. Supermaid pays maids a set amount for each house cleaned, not based on how much time they actually worked. (Defs.' Dep. 41:12-17, 42:5-9; Defs.' Admis. 12; Defs.' Interrog. Ans. 8; Office Manager Decl. ¶ 35). Supermaid pays maids by the job, regardless

---

[17] Supermaid's Employee Quick Report payroll records (Bates Nos. PL-02572—PL-02682) and Supermaid's Timesheets (Bates Nos. PL-00002—PL-02570; PL-02683—PL-04652) are filed herewith as PSJ Ex. S. Hard copies of Ex. S are labeled as "Super Maid, LLC Timesheets & Payroll Records," Books 1-7.

of the amount of time worked. (Defs.' Admis. 13; Arand Decl. ¶ 29, Bahena Decl. ¶ 32, Cruz Decl. ¶ 25, De la Cruz Decl. ¶¶ 29-30, Garcia Decl. ¶ 17, Villasenor Decl. ¶ 25).

44. Maids cannot earn more than the amount Supermaid designated for the job. (Defs.' Admis. 14, Arand Decl. ¶ 29, Bahena Decl. ¶ 32, Cruz Decl. ¶¶ 25-26, De la Cruz Decl. ¶¶ 29-30, Villasenor Decl. ¶ 25). If a maid asks to be paid more for a particular job, Supermaid does not "want to meet all of their requests because if that would happen every time they would be asking for more." (Defs.' Dep. 34:4-35:4).

45. Maids are sometimes paid more per job for certain larger houses. (Office Manager Decl. ¶ 20, Arand Decl. ¶ 18, Bahena Decl. ¶ 17; Cruz Decl. ¶ 26; Villasenor Decl. ¶ 15). However, it is up to Supermaid whether the company pays the maid extra. (*Id.*)

46. When maids begin working for Supermaid, the company pays maids who drive the company vehicle around $20.00 per house, and the vehicle passenger around $15.00 per house. (Office Manager Decl. ¶ 19; Arand Decl. ¶ 17; Bahena Decl. ¶¶ 16, 18; Cruz Decl. ¶ 15; De la Cruz Decl. ¶ 15; Garcia Decl. ¶ 16; Villasenor Decl. ¶ 14).

47. Supermaid gave some maids raises at its discretion (Office Manager Decl. ¶19), but Supermaid refused to give other maids raises. (Arand Decl. ¶ 19, Garcia Decl. ¶ 19, Villasenor Decl. ¶ 16). Some maids did not believe they could renegotiate their pay, so they did not ask. (Bahena Decl. ¶ 19).

48. Maids do not have any opportunity to earn more than their job rate based on their speed, skill, efficiency, or other factors. (Defs.' Admis. 16). Maids cannot simply clean faster to complete more jobs because (1) Supermaid set the maids' schedule the night before (Cruz Decl. ¶ 23, De la Cruz Decl. ¶ 29, Garcia Decl. ¶ 30, Villasenor Decl. ¶ 25); (2) the jobs already take longer than Supermaid assigns for them (Arand Decl. ¶ 29, Bahena Decl. ¶

11

32, Garcia Decl. ¶ 30); and (3) maids risk getting customer complaints if they rush, which result in deductions from pay (Cruz Decl. ¶ 23).

49. Maids cannot hire other maids to perform their job assignments or to assist them. (Defs.' Admis. 15; Office Manager Decl. ¶ 16, Arand Decl. ¶ 14, Bahena Decl. ¶ 13, Cruz Decl. ¶ 8, De la Cruz Decl. ¶ 8, Garcia Decl. ¶ 7, Villasenor Decl. ¶ 7). Maids must get permission from Krawczyk, and each maid had to apply directly to Supermaid. (Defs.' Dep. 165:8-19; Office Manager Decl. ¶ 23, Arand Decl. ¶ 14, Bahena Decl. ¶ 13, Cruz Decl. ¶ 8, De la Cruz Decl. ¶ 8, Garcia Decl. ¶ 7, Villasenor Decl. ¶ 7).

50. Supermaid did not pay more for hours worked in excess of 40 in a workweek. (Defs.' Admis. 17, Arand Decl. ¶ 48, Bahena Decl. ¶ 54, Cruz Decl. ¶ 38, De la Cruz Decl. ¶ 47, Garcia Decl. ¶ 46, Villasenor Decl. ¶ 43). Krawczyk admits he does not pay maids overtime for hours over 40 in a workweek because maids are not employees and his business model would collapse if he had employees. (Defs.' Dep. 75:5-76:3).

51. Maids routinely were assigned to work six days per week. (Defs.' Admis. 18, Arand Decl. ¶ 26, Bahena Decl. ¶ 29, Cruz Decl. ¶ 28, De la Cruz Decl. ¶ 27, Garcia Decl. ¶ 27, Villasenor Decl. ¶ 28). If a maid takes a day off, Supermaid sometimes disciplines her the next day by assigning more jobs, fewer jobs, dirtier jobs, or jobs that are further away. (Arand Decl. ¶ 34, Villasenor Decl. ¶ 31).

52. Supermaid does not pay maids for time spent traveling between jobs. (Defs.' Admis. 29; Office Manager Decl. ¶ 35, Arand Decl. ¶ 34, Bahena Decl. ¶ 37, Cruz Decl. ¶ 31, De la Cruz Decl. ¶ 34, Garcia Decl. ¶ 35, Villasenor Decl. ¶ 31). "Traveling time is not paid because there is no control for it." (Defs.' Interrog. Ans. 13). Supermaid does not pay the driver from the time she picks up her passenger to the time they arrive at the first job site.

(Defs.' Admis. 30). Supermaid does not pay the driver from the time they depart the last jobsite to the time the driver drops off her passenger. (Defs.' Admis. 31).

53. Supermaid does not track and maintain records of time maids spend traveling between jobsites. (Defs.' Admis. 43). On average, maids testify that it took around one hour to travel between jobs, but could take as little as 30 minutes or as long as two hours. (Arand Decl. ¶ 32, Bahena Decl. ¶ 35, Cruz Decl. ¶ 29, De la Cruz Decl. ¶ 32, Garcia Decl. ¶ 33, Villasenor Decl. ¶ 29).

54. Supermaid does not provide maids with paid breaks or meal periods. (Defs.' Admis. 44; Arand Decl. ¶ 25, Bahena Decl. ¶ 28, Cruz Decl. ¶ 21, De la Cruz Decl. ¶ 26, Garcia Decl. ¶ 26, Villasenor Decl. ¶ 23). Maids are not permitted to take a lunch break. (Office Manager Decl. ¶ 31; Cruz Decl. ¶ 21, Villasenor Decl. ¶ 23). Maids were required to eat meals in the vehicle between jobs or when they got home. (Office Manager Decl. ¶ 31).

55. Supermaid installed a GPS tracking system on each of the Honda Element company vehicles. (Employee Responsibilities form; Defs.' Dep. 97:22-25; Defs.' Admis. 27; Office Manager Decl. ¶ 30, Arand Decl. ¶ 24, Bahena Decl. ¶ 26, Cruz Decl. ¶ 20, De la Cruz Decl. ¶ 25, Garcia Decl. ¶ 25, Villasenor Decl. ¶ 22).

56. The company has a computer monitor in its office with a map of the city and suburbs showing maids' locations, which Supermaid uses to track the whereabouts of the maids. (Defs.' Dep. 99:17-100:4; Defs.' Admis. 28; Office Manager Decl. ¶ 30). Supermaid calls maids to tell them to hurry up if they are running late, not at the correct location, or stop to eat lunch. (Office Manager Decl. ¶ 30, Arand Decl. ¶ 24, Bahena Decl. ¶ 26, Cruz Decl. ¶ 20, De la Cruz Decl. ¶ 25, Garcia Decl. ¶ 25, Villasenor Decl. ¶ 22).

57. Supermaid also used the GPS tracking system to determine if maids had driven the company vehicles for non-work purposes. (Defs.' Dep. 96:19-25, 98:1-11; Office Manager Decl. ¶ 33). Supermaid takes pay deductions from maids for using the company vehicles on personal time. (Employee Responsibilities form; Office Manager Decl. ¶ 33).

58. Between 2000 and the end of 2009 or beginning of 2010, Supermaid maintained spreadsheets in Microsoft Excel, which Krawczyk used to calculate what to pay maids. (Defs.' Dep. 122:10-18, 127:21-128:2; Defs.' Dep. Ex. 8.) The Excel pay spreadsheets indicate the amounts paid and number of jobs maids worked. (Defs.' Dep. 129:9-19, Defs.' Dep. Ex. 8.) Krawczyk utilized white comment boxes to make notes on the Excel pay spreadsheets about things he needed to discuss with maids. (Defs.' Dep. 129:22-130:17; Defs.' Dep. Ex. 8.) Krawczyk admits he used these comment boxes to note the deductions to be taken from maids' pay but states that "it never worked." (Dep. 130:18-21, Defs.' Dep. Ex. 8.)

59. Defendants required maids to wear a uniform consisting of a white polo shirt and a specific type of pants. (Employee Responsibilities form; Defs.' Admis. 38; Office Manager Decl. ¶ 41, Arand Decl. ¶ 40, De la Cruz Decl. ¶ 43, Villasenor Decl. ¶ 35). Supermaid's policy was to take a deduction from a maid for not wearing a uniform. (Employee Responsibilities form; Office Manager Decl. ¶ 41, De la Cruz Decl. ¶ 43, Villasenor Decl. ¶ 35).

60. Supermaid tracks the quality of maids' performance by calling random customers for feedback. (Defs.' Interrog. Ans. 1(f)). If a customer complains about a maid's work, the maid will not be paid for that cleaning job. (Employee Responsibilities form; Defs.' Admis. 39; Office Manager Decl. ¶ 37, Arand Decl. ¶ 38, Bahena Decl. ¶¶ 44-45,

Cruz Decl. ¶ 33, De la Cruz Decl. ¶ 38, Garcia Decl. ¶¶ 40-41, Villasenor Decl. ¶ 37). Krawczyk admits if a customer complains and he sends another team to fix the problem, he does not pay the first team of maids for the job. (Defs.' Dep. 107:9-108:23, 110:6-13, 139:14-140:2). Krawczyk admits that comment boxes in the company's Excel pay spreadsheets illustrate instances where a customer complained, another maid team had to fix the problem, and he deducted the first maid team's pay for the entire job. (Defs.' Dep. 139:14-140:2 (Ex. 8, pp. 5), 149:1-13 (Ex. 8, pp. 8), 151:2-11 (Ex. 9, pp. 9)).

61. Fines related to parking and traffic tickets are deducted from maids' pay. (Employee Responsibilities form; Defs.' Admis. 41; Office Manager Decl. ¶ 40, Arand Decl. ¶ 39, Bahena Decl. ¶ 41, Garcia Decl. ¶¶ 38-39). Krawczyk admits that several of comment boxes in the company's Excel pay spreadsheets reflect deductions from maids' pay for parking tickets, ranging from $50 to $100. (Defs.' Dep. 134:4-21 (Ex. 8, pp. 2), 135:6-16 (Ex. 8, pp. 3), 151:2-11 (Ex. 8, pp. 9).

62. Supermaid also took deductions for damage or vandalism to vehicles, vehicle towing fees, and dirty vehicles. (Employee Responsibilities form; Office Manager Decl. ¶ 40, Bahena Decl. ¶ 41, Cruz Decl. ¶ 34, De la Cruz Decl. ¶ 41). Although Krawczyk states he does not take pay deductions for damage to vehicles, Krawczyk inserted comments on his Excel pay spreadsheet for three pay periods in a row about a deductible for an accident, and could not provide a reason he noted this on pay records. (Defs.' Dep. 141:18-142:17 (Ex. 8, pp. 6)).

63. Supermaid also took deductions from maids' pay for breaking or damaging items in Supermaid's customers' homes or jobsites. (Employee Responsibilities form; Defs.' Admis. 40; Defs.' Interrog. Ans. 11; Office Manager Decl. ¶ 40, Bahena Decl. ¶ 43, De la

Cruz Decl. ¶ 39, Villasenor Decl. ¶ 38). Defendants admit that damage done by maids in customers' homes is "usually taking [sic] care of by maids," at least "broken glass or small items on the shelf or broken picture frame[s]." (Defs.' Interrog. Ans. 11). Larger damages are covered by Supermaid's insurance. (Defs.' Interrog. Ans. 11).

64. Supermaid also took deductions when maids were missing cleaning products supplied by Supermaid. (Employee Responsibilities form; Bahena Decl. ¶ 44, Garcia Decl. ¶ 45, Villasenor Decl. ¶ 36).

65. Maids cannot dispute deductions from their pay. (Office Manager Decl. ¶ 42; Cruz Decl. ¶ 33; De la Cruz Decl. ¶ 38; Garcia Decl. ¶ 40; Villasenor Decl. ¶ 37). Even if a maid complains, Supermaid still takes the deduction. (Office Manager Decl. ¶ 40; Cruz Decl. ¶ 33; De la Cruz Decl. ¶ 38; Garcia Decl. ¶ 40; Villasenor Decl. ¶ 37). Krawczyk admits that maids told him tickets they received were not their fault, and he took deductions anyway. (Defs.' Dep. 134:12-135:5).

66. Maids did not submit invoices or similar documents, charging Supermaid for their work. (Defs.' Admis. 45). Instead, Supermaid created timesheets for maids to track their jobs each week and submit to the office. (Defs.' Timesheets; Defs.' Interrog. Ans. 2(a), 2(c), 3).

67. Gilberto Herrera, investigator, Wage and Hour Division, U.S. Department of Labor (hereinafter "Wage and Hour"), conducted an investigation of Supermaid under the FLSA in 2010-2011. (Herrera Decl. ¶ 3[18]). Krawczyk represented Supermaid during the investigation. (Defs.' Admis. 51; Herrera Decl. ¶ 5).

68. Investigator Herrera initiated the investigation of Supermaid by conducting an initial conference with Krawczyk on or around June 13, 2010, at the company office. (*Id.* at ¶

---

[18] *Declaration of Wage and Hour Investigator Gilberto Herrera* filed herewith as PSJ Ex. R.

16

5). In the initial conference, Krawczyk told Investigator Herrera the maids were independent contractors, not employees. (*Id.* at ¶ 6).

69. During the course of his investigation, Investigator Herrera conducted interviews of 24 maids to determine the employment relationship between maids and Supermaid, as well as the pay practices and hours worked. (Herrera Decl. ¶ 8). The interviewees provided details of their jobs, hours worked, pay, and employment with Supermaid. (Herrera Decl. ¶ 9, Arand Decl., Bahena Decl., Cruz Decl., De la Cruz Decl., Garcia Decl., Villasenor Decl.) The facts stated in the declarations of employees marked as Exhibits PSJ Ex. H-M are very similar or the same as other employees provided during their interviews. (Herrera Decl. ¶ 9).

70. Supermaid produced some pay records, time records, and tax forms requested by Investigator Herrera during the investigation. (Herrera Decl. ¶7).

71. During the investigation, defendants were advised that Wage and Hour found that employees were wrongly classified by Supermaid as independent contractors. (Defs.' Admis. 54).

72. Since 2011, defendants have continued to treat and compensate maids as independent contractors. (Defs.' Admis. 55).

73. As a result of the investigation, Wage and Hour determined that Supermaid withheld minimum wage and overtime compensation from 60 employees. (Herrera Decl. ¶ 12).

74. Wage and Hour retained Deloitte Financial Advisory Services LLP's Federal Discovery Practice (hereinafter "Deloitte") to manually code the data from Supermaid's

timesheets and payroll records and format the resulting coded data into a spreadsheet to calculate back pay for Supermaid's workers. (Deloitte Decl. ¶¶ 2-3[19]).

75. Deloitte was provided with 62 payroll records – each for a unique employee name – and 4,539 timesheets (Deloitte Decl. ¶ 4), and used manual coding of these records to obtain the necessary data for back pay calculations. (Deloitte Decl. ¶ 5).

76. For a number of employees, Supermaid produced timesheets but no payroll records, thus preventing accurate calculation of back pay for those employees. (Deloitte Decl. ¶ 14; Defs.' Payroll; Defs.' Timesheets).

77. In addition, Supermaid's timesheets were frequently missing the following information: the maid's full name, the "time out," and the full date including the year. (Deloitte Decl. ¶ 9-10; Defs.' Timesheets).

78. Deloitte therefore had to use logical assumptions and averages to calculate back pay where Supermaid did not maintain accurate records. (Deloitte Decl. ¶¶ 9-13).

79. Deloitte transcribed the relevant data to "Super Maid, LLC Individual Employee Back Pay Calculations" forms for each employee and the unpaid minimum wage and overtime compensation (for hours worked in excess of 40 in a workweek). (Deloitte Decl. ¶ 14, Deloitte Decl. Ex. 4).

---

[19] Declaration of Amy Dove, Senior Manager in Deloitte Financial Advisory Services LLP's Federal Discovery Practice, filed herewith as PSJ Ex. T.

80. The total amount of unpaid minimum wage and overtime compensation is $92,252.63 for 56 of the employees identified on Exhibit A of the Complaint, which Deloitte transcribed to "Super Maid, LLC Summary of Employee Backpay." (Deloitte Decl.¶ 15, Deloitte Decl. Ex. 5).

Respectfully submitted,

**M. PATRICIA SMITH**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

| | |
|---|---|
| U.S. Department of Labor | /s/ Linda J. Ringstad |
| Office of the Solicitor | **LINDA J. RINGSTAD** |
| 230 South Dearborn Street, Rm. 844 | Attorney |
| Chicago, Illinois 60604 | |
| Telephone No.:  (312) 353-3668 | |
| ringstad.linda@dol.gov | |
| | |
| U.S. Department of Labor | /s/ Stacey L. Scanlon |
| Office of the Solicitor | **STACEY L. SCANLON** |
| 230 South Dearborn Street, Rm. 844 | Attorney |
| Chicago, Illinois 60604 | |
| Telephone No.: (312) 353-6990 | |
| scanlon.stacey.l@dol.gov | |

Attorneys for **THOMAS E. PEREZ**,
Secretary of Labor,
U.S. Department of Labor, Plaintiff